Good morning. Sylvia Bias on behalf of Mr. Mack. May it please the Court. I'm hoping that the Court has not already made up its mind about the Batson error in this case because even though that was an uncertified issue, it was an issue... The complete absence of any evidence that one can compare the strikes to, given the fact that there was plausible reasons apparent from the face of the record for striking the two black veneermen whom the prosecutor struck, and there were plausible reasons apparent from the record for not having stricken the comparable jurors that you've set forth. I mean, how is it debatable? Bias I think it's debatable because all of the people that I mentioned that were comparable, that is, anyone who had any family members associated with or involved in any crime or law enforcement, those people were white. And the two black people that he struck, the two black women that he struck also had family members who were previously involved in law enforcement or had been arrested or had some kind of involvement, but yet they were struck and the white people were not struck from the jury. I think that in this case it was pretty clear that the judge should have applied Batson. Batson has been around since 1986. Mr. Mack's trial was in 1995. There's no question that it's not a matter of a retroactive application in a case like this, because Batson was the law way before his trial. I don't think that's the question. The question is whether, assuming Batson applies rather than Wheeler, whether it's debatable that a prima facie showing was made out. I think it's pretty clear that there was a prima facie showing. The judge just said there's no showing of discrimination. The trial attorney was not very clear as to who was not struck by the prosecutor, who was not challenged by the prosecutor. But it's clear from the record, even though she may not have been very clear in articulating to the trial court why she thought there was discrimination, other than that the defendant was black and the two women that were struck were black, and the three people who had similar backgrounds who were white were not struck. In terms of the argument with respect to the instructional error, and I am cognizant of the fact that the government provided a new per curiam decision by the Supreme Court that says, really says we should leave the States to interpret their own law. And I think that that is well taken, except for that the law in California was in flux. Well, yes, but you see, the problem is, what you had is, if I understand the situation right, you're relying on Frye, which is one California court of appeals decision. The court, the California court of appeals in this case sort of disagreed with Frye, but in any event said Frye is distinguishable. This happens all the time in California. There's a difference of views between the two, between the two districts. So what? That's a matter of California law, isn't it? It's not cognizable on Federal habeas review. Yes, it is. I think that if it's an unreasonable application of California law, it is. No, no, no, no. It's an unreasonable application of Federal, excuse me, United States Supreme Court precedent. I misspoke. It's an unreasonable application of Federal law, constitutional law. And that is because it was clear, well, it was ambiguous, that the manner in which the trial judge instructed the jury was very ambiguous because Mr. Mack's defense was that he didn't take the car, he just simply drove the car. And his defense was that he drove the car, and that the trial court ended up instructing on a lesser-included offense the exact same way that it instructed on the offense of 108 by 180. Well, you don't have to instruct on a, as a matter of Federal constitutional law, you don't have to instruct on a lesser-included offense at all. So how could it be error to perhaps give an ambiguous instruction that could be interpreted as not allowing for one? Because in this case, it was — it confused the jury, and that was his only defense. And it wasn't just a — it wasn't just a lesser-included instruction. It was an instruction on his defense. And I'll reserve for just a few more minutes.  Mr. Brotillo. Thank you, Your Honor. May it please the Court, my name is Gary Brotillo. I work for the California Attorney General. I represent the warden, who is the respondent in this habeas action. Turning to the only certified issue, which regards the instruction, the U.S. Supreme Court's per curiam opinion last week in Bradshaw makes it pretty clear that this Court can't weigh into a dispute about a state law issue, and that's what we have here. On top of that, we have Turner v. Marshall from this Court saying that this would be a Teague Bar issue, or at least under the AEDPA, you can't reach it. Because it would require the retroactive application of a new rule of criminal procedure. With respect to the Batson issue, I guess we're arguing whether or not this case meets the standard under SLAC for issuing a COA. In that regard, I've already argued that because of the way the brief was done, it didn't comply with the local rules, that the Court should not even consider the request to expand the COA. And then there's the additional issue that, you know, the two jurors that were, there were three black jurors struck, two by the prosecution, one by the defense. The two jurors that were struck, both of them had family members who were being prosecuted or had been prosecuted by the DA for crimes, which is the most common reason, generally speaking, that prosecutors excuse jurors. And with respect to the question of whether or not there's a claim that could be debatable among a reasonable jurist, I would draw the Court's attention to Justice White's concurring opinion in Batson itself, which said that striking one or two black jurors by itself does not constitute a prima facie case. There's two decisions from this Court, Vicara, 816F2nd at 457, and Wade versus Batson, that make it pretty clear that there's not a debatable issue in this case. In any event, the Court would have to issue a certificate of appealability. If you get by the prima facie case, it looks like there may be a constitutional error on the burden of proof, because the California Wheeler burden was followed rather than Batson, is that right? Well, I don't think that really happened in this case. I mean, first of all, we'd have to go to the question of whether Johnson creates a new rule under Teague, and that would have to be briefed. The other problem we may have is Collins v. Rice's pending proof. That's not a new rule, is it? Well, I don't think so. Batson's certainly not a new rule. No, but it's a difficult and complicated legal issue when you had the California Supreme Court in box saying that their standard complied, and then we had later decisions from this Court saying that, yeah, the substantial likelihood standard was the same, and then only until Johnson do we get the opinion from the U.S. Supreme Court saying, no, it's not the same. So it may not be a new rule, but the retroactive application angle is one of the most difficult ones I've ever seen. It could be. It's not Teague-Bart, but it ought to be briefed if the Court is concerned about it. Can you take us through the prima facie case from your viewpoint? In this case? Yeah. What you said, the two jurors who were struck had family members who were being prosecuted. Tell us about the comparable jurors. Well, I haven't fully briefed this issue because the COA wasn't ready. I'm not really prepared to talk about the comparable jurors. In other words, is your position that if the Court decides to consider the Batson issue, you want further chance to address that in a further brief? Yes, Your Honor. That's what we asked for in the brief, and it's also what Circuit Rule 22-1F guarantees. All right. Thank you. I don't want to use your time up on this. Yeah. The other thing I would point out just briefly is that we do have a factual determination here by the trial court and the court of appeal. Collins v. Rice is pending before the U.S. Supreme Court right now. I think oral argument was, if it wasn't yesterday, it was the day before yesterday. Yes, and would you remind your Attorney General, Lockyer, that it doesn't help him to make ad hominem attacks on the Court when he's making Supreme Court arguments? I'll certainly say that to him, but I didn't. You don't know about what he said during that oral argument? I don't know the quotes now. I haven't had time to look at it. Okay. Would you like me to send him? I'll send him a note about that. Send him a note. Say it's from Judge Wardlaw. Okay. Meanwhile, do you have anything else to add on this case or? No. I mean, it could be that Collins v. Rice sets down a standard which makes it, this case, unapproachable from the factual determination point of view. In other words, the trial court and the court of appeal both determined that, factually speaking, the prosecutor had ample reason to dismiss these two jurors. And so under 2254D, there's just no room for this court to do new factual determinations. But once again, the only thing I guess that's pending at this point is the question about whether or not this particular Batson issue meets the standard under I will do that for the court, Your Honor Thank you. For Judge Wardlaw. Judge Wardlaw, yes. From Judge Wardlaw. Yes, all right. I just wanted to point out to the court, with respect to the jury instruction   on taking and driving a vehicle, but the jury wasn't even instructed on that particular issue. They said taking or driving, that's what the district court did, so there was an additional error there. And with respect to Justice Reed's question regarding the You promoted me. I've only made judge so far, and that's about as far as I think I'm going to go. Okay. Well, that's a good omen. There were several jurors who also had family members who were not struck by the government. One of them was a person named Patrick. And let's see. Mr. Patrick. And he also had a relative. There was a Miss Kim who had a brother who had been arrested. Those are in the record, and I actually included those in the excerpt of record at 107, their testimony regarding the relatives that they had. There was another woman named Colleen Escamillo who had a nephew who had been arrested for drug-related offenses. And so all of those people, there were three of them that were not struck, and they were in the same similar situation. Unless the court has any other questions. I don't believe so. Thank you, counsel, for your argument. Both of you. The matter just argued will be submitted.
judges: Rymer, Wardlaw, Reed